Bruce **COOPER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16525.

United States Court of Appeals
Ninth Circuit.

Sept. 14, 1960.

William Strong, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Wm. Bryan Osborne, Asst U. S. Attys., Los Angeles, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

Appellant, hereinafter referred to as defendant, was indicted in the Southern District of California under the false statement statute, 18 U.S.C.A. § 1001.[1]

The indictment charged that:

"On or about the 27th day of March, 1956, defendant Bruce Cooper did wilfully and knowingly make and cause to be made false and fraudulent statements and representations in a matter within the jurisdiction of a department and agency of the United States by stating to Leslie Jacobs and William Flynn, special agents of the Internal Revenue Service, that he had never received any income derived from prostitution, at Los Angeles in the Southern District of California, Central Division, whereas, as he then and there well knew, he had received substantial income during the tax years

---

1. § 1001.  Statements or Entries Generally.

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

in question, namely, 1951, 1952, 1953 and 1954, derived from prostitution."

The jury found "the defendant guilty as charged in the indictment." The Court imposed a fine of $5,000 and committed the defendant to the custody of the Attorney General for the period of 18 months.

This Court has jurisdiction on appeal. 28 U.S.C.A. § 1291.

It was stipulated by counsel that if a Mrs. McManus, a reporter, were called to the witness stand and sworn on behalf of the Government she would testify in substance as follows:

"That on or about the 27th day of March, 1956, at the offices of the Internal Revenue Service at 417 South Hill Street, Los Angeles, California, the following persons were present: The defendant Bruce Cooper, his attorney Joseph T. Forno, William Flynn, Internal Revenue agent, and Leslie Jacobs, special agent;

"And that during the period they were present the following questions, among others, were asked of this defendant, to which he gave the following replies (under oath):

"Q.   Have you ever been engaged in the following types of business or activities:  *   *   *

"Q.   How about prostitution or house of ill repute?

"A.   Never.

"Q.   $3,000 taken from a Friday to a Monday morning from prostitution.  Did you share in that?

"A.   No, I never shared in any kind of money that was derived from prostitution."

Exhibit 1–B, containing the above questions and answers, was introduced and admitted in evidence.  No contention is made that 1–B is not a correct extract taken from sworn statement of Cooper in the office of the Intelligence Division, Internal Revenue Service, 417 South Hill Street, Los Angeles, California, March 27, 1956.

Witnesses Jacobs and Flynn identified themselves as the Internal Revenue Agents who interviewed defendant Cooper on March 27, 1956.  Mr. Jacobs testified that the purpose of the conference was, "It was an inquiry to determine Mr. Cooper's tax liability."  And Mr. Flynn stated, "It was in connection with the audit made on Mr. Cooper's income tax." It is apparent from the testimony of Mr. Jacobs and Mr. Flynn that the questions and answers set forth in Exhibit 1–B were propounded to and given by the defendant in a matter within the jurisdiction of a department of the United States, namely, the Treasury Department, Internal Revenue Service, at and during the conference of March 27, 1956.  Brandow v. United States, 9 Cir., 268 F.2d 559, 564; Cohen v. United States, 9 Cir., 201 F.2d 386, 392.

That the answers or statements given by the defendant Cooper at the conference of March 27, 1956, were false is supported by the testimony of the five female witnesses.  The jury could fairly infer from the evidence that such false statements were fraudulent and were given for the purpose of defrauding the Government of revenue to which it was entitled. It is apparent from the record that the jury's verdict is based upon substantial evidence.

Defendant complains of the denial by the District Court of his motions for dismissal of the indictment, for discovery and inspection of certain affidavits, and for a bill of particulars.

Defendant contends that the indictment is defective, and that the Court erred in denying his motion to dismiss the indictment.  In United States v. Silver, 2 Cir., 235 F.2d 375, the indictment, under 18 U.S.C.A. § 1001, like that under consideration here, followed the language of the statute and was held to be fully adequate to inform the defendant of the essential facts constituting the offense.

Considering indictments in the language of the statute, the Supreme Court in United States v. Debrow, 346 U.S. 374, 377, 74 S.Ct. 113, 115, 98 L.Ed. 92, held:

"The charges of the indictments followed substantially the wording of the statute, which embodies all the elements of the crime, and such charges clearly informed the defendants of that with which they were accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecutions for the same offense. It is inconceivable to us how the defendants could possibly be misled as to the offense with which they stood charged. The sufficiency of the indictment is not a question of whether it could have been more definite and certain. * * *"

The motion to dismiss the indictment was properly denied.

The motion for discovery and inspection and the motion for a bill of particulars each seek access to and have photostats made of three affidavits taken March 27, 1956, by an agent of the Internal Revenue.

Paragraph I of the motion for discovery and inspection is as follows:

"Your petitioner, Bruce Cooper, hereby asks this Court to require the Attorney for the United States of America for the Southern District of California, Laughlin E. Waters, to allow your petitioner, Bruce Cooper, to have photostats made of the three affidavits in the United States Attorney's possession. These affidavits were taken March 27, 1956 by one Harry Lockman of the Internal Revenue Department of the United States Government; said affidavits purportedly stating that money was given to your petitioner for purposes of prostitution during the period, 1951 through 1954."

Paragraph III of said motion for discovery and inspection reads:

"Your petitioner respectfully moves under Rule 16 of the Federal Code of Criminal Procedure that this Honorable Court compel the United States Attorney to allow these affidavits to be photostated at a time and place set out by this Court:

"Rule 16 Discovery and Inspection

" 'Under Motion of a defendant any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documentary or tangible objects—upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.' "

In the motion for a bill of particulars, Paragraph III is as follows:

"Your petitioner, Bruce Cooper, hereby asks this Court to require the Attorney for the United States of America for the Southern District of California, Laughlin E. Waters, to allow your petitioner, Bruce Cooper, to have photostats made of the three affidavits in the United States Attorney's possession. These affidavits were taken March 27, 1956 by one Harry Lockman of the Internal Revenue Department of the United States Government; said affidavits purportedly stating that money was given to your petitioner for purposes of prostitution during the period 1951 through 1954."

The motion for discovery and inspection was heard and denied by Judge Tolin and Judge Harrison heard and denied the motion for a bill of particulars. Subsequently, and just prior to the beginning of the trial, Judge Hall, the trial Judge, informed counsel for the defendant that if any of the persons who made the three affidavits were called as witnesses, he would require counsel for the Government to deliver the affidavit or affidavits to defendant's counsel. No contention seems

to have been made that 18 U.S.C.A. § 3500(b) was not complied with by the Court.

■ The motion for discovery and inspection on its face shows that counsel for the defendant invoked Rule 16 of the Federal Rules of Criminal Procedure. It will be noted that Rule 16 was not correctly quoted in Paragraph III of the motion. Rule 16 is as follows:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, *obtained from or belonging to the defendant or obtained from others by seizure or by process*, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable. * * *" [Emphasis added.]

Obviously, Rule 16 has no application here as no contention seems to have been made that the affidavits were obtained from or belonged to the defendant, or obtained from others by seizure or by process.

The motion for discovery and inspection was correctly denied.

■ The motion for a bill of particulars is apparently an attempt to circumvent the ruling of Judge Tolin in his denial of a motion for discovery and inspection. As above noted, each of these motions sought the same result.

Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S.C.A., should not be invoked to bring about a result prohibited in effect by Rule 16, Federal Rules of Criminal Procedure, 18 U.S.C.A.

"A bill of particulars should be granted where it is thought necessary (1) to protect the defendant against a second prosecution for the same offense, or (2) to enable the defendant to adequately prepare his defense and avoid surprise at the trial. * * * It is apparent that the offense charged is sufficiently defined to protect appellant from double jeopardy." Remmer v. United States, 9 Cir., 205 F.2d 277, 281.

The bill of particulars here does not ask that the charge be particularized. All that is asked here is disclosure of evidence. Defendant requests that three affidavits taken March 27, 1956, by one Harry Lockman of the Internal Revenue, be made available to defendant for purposes of having photostats made. As there is no request for the names of those who made the affidavits, it is fair to imply that the defendant knew who made them and if he did not know the names of the witnesses, the Government would not be required to provide them. In United States v. Bryson, 16 F.R.D. 431, 436, District Judge Murphy, in the Northern District of California, considering an indictment under 18 U.S.C.A. § 1001, held that it is not the function of bill of particulars to force Government to spread its entire case before accused and order requiring Government to state in bill of particulars overt acts upon which indictment is based would be vacated.

■ The motion for a bill of particulars is addressed to the sound discretion of the trial court and the trial court's ruling thereon should not be disturbed in the absence of an abuse of that discretion. Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 851; Schino v. United States, 9 Cir., 209 F.2d 67, 69; Kobey v. United States, 9 Cir., 208 F.2d 583, 592.

The defendant was not prejudiced and Judge Harrison rightly denied his motion for a bill of particulars.

Defendant claims error by the Court in permitting defendant's former wife, Patricia Bulayunjan, to testify against him. Outside of the presence of the jury, counsel objected as follows:

"Mr. Strong: This woman was married to Mr. Cooper from 1946 to 1958 and cannot testify against him."

In the course of the colloquy which followed between Court and Counsel, Exhibit 6, a certified copy of a judgment of annulment entered in the Superior Court of the State of California, in and for the County of Los Angeles, on the 18th day of January, 1957, was marked for identification and shown to the Court. Following that counsel for the defendant urged that the witness could not testify as to what happened in 1951, 1952, and 1953. After admitting Exhibit 6 in evidence, the trial Judge advised the witness as follows:

"This is a certified copy of a judgment of annulment, which is dated the 18th of January, 1957, in the Superior Court of the State of California in and for the County of Los Angeles and which was filed on January 18, 1957, and entered January 22, 1957. * * *, I will state to the witness, the question has been raised by counsel for Mr. Cooper as to whether or not you can testify concerning any act or conduct between both of you during the period from the date of the marriage ceremony on December 1st, 1945, until the annulment. The effective date of the annulment was January 22, 1957. * * *—that you may testify concerning any conduct of Mr. Cooper's during the period that you were married to him; you may testify concerning any statement he made to you while other people were present; but you may not testify concerning any statements or concerning matters told you when the two of you were alone. Do you understand?"

There was no contention made at the trial by the defendant that the marriage relation, if it ever existed, existed after January 22, 1957. The language of counsel in urging his objections to the calling of the witness, Patricia Bulayunjan, recognized that the marriage had terminated and no objection was made to the introduction of Exhibit 6 in evidence.

From an examination of the record, it is apparent that the witness, Patricia Bulayunjan, did not testify as to any confidential marital communications. She disclosed no part of any conversation or communication occurring between her and defendant while alone.

Regardless of whether the marriage was by the decree of annulment rendered void from its inception or whether the decree operated only from the date of entry, we have a state of facts similar to those dealt with by Chief Justice Warren in Pereira v. United States, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435:

"The petitioners challenge the admissibility of Mrs. Joyce's testimony as being based on confidential communications between Mrs. Joyce and Pereira during the marriage. Petitioners do not now contend that Mrs. Joyce was not a competent witness against her ex-husband. They concede that the divorce removed any bar of incompetency. That is the generally accepted rule. Wigmore, Evidence, § 2237; 58 Am. Jur., Witnesses, § 204. Petitioners rely on the proposition that while divorce removes the bar of incompetency, it does not terminate the privilege ' for confidential marital communications. Wigmore, Evidence, § 2341(2); 58 Am.Jur., Witnesses, § 379. This is a correct statement of the rule, but it is inapplicable to bar the communications involved in this case, since under the facts of the case, it cannot be said that these communications were confidential. Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. Blau v. United States, 340 U.S. 332 [71 S.Ct. 301, 95 L.Ed. 306]; Wolfle v. United States, 291 U.S. 7 [54 S.Ct. 279, 78 L.Ed. 617].

534

The presence of a third party negatives the presumption of privacy. Wigmore, Evidence, § 2336. So too, the intention that the information conveyed be transmitted to a third person. Id., § 2336. The privilege, generally, extends only to utterances, and not to acts. * * * "

The testimony of Patricia Bulayunjan was properly admitted.

In the process of the selection of the jury, the Judge informed the venire, among other matters, that:

"As noted in the indictment, the charge is that the defendant made a false statement, in that he had never received any money from prostitution, * * * ."

And the jurors were instructed that:

"The gist of the offense is that the statements to the effect that he never received or shared in money derived from prostitution were false as to his source of income. You cannot convict the defendant merely because he engaged in the business of, or activities connected with, prostitution.

"There thus remains for your determination two elements: Was the statement false, that is, did the defendant beyond a reasonable doubt receive substantial income during the tax years 1951, 1952, 1953, and 1954 which was derived from prostitution. * * * "

■■ The jury was not misled and the instruction was an accurate and correct statement. Furthermore, defendant is in no position to assign error as to any portion of the charge as failed to avail himself of the privilege given by Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., of objecting to the instructions given as a whole or to any individual instruction.

Defendant claims error " * * * in admitting evidence of ownership of houses of prostitution (Rep.Tr. 258–262) on the theory of 'prior similar acts' (Rep.Tr. 260)."

■ The indictment charged and Exhibit 1–B tended to show that the defendant stated that he had never shared in any kind of money that was derived from prostitution. It was brought out on cross-examination by defendant's counsel that the witness, Patricia Bulayunjan, first met the defendant in February of 1945 (Rep.Tr. 211); that she had engaged in prostitution prior to meeting the defendant and that she worked in Delano, California, as a prostitute after meeting him. (Rep.Tr. 212) Then followed cross-examination showing that after meeting defendant she had worked, obviously, as a prostitute, at various other locations. (Rep.Tr. 212, 213) She testified she first went to work in San Francisco, California, in 1945. Counsel for the Government, in opening his re-direct examination (Rep.Tr. 258), propounded the question: "You mentioned on cross-examination a number of addresses." Then followed a mention of a number of addresses given by the witness on her cross-examination (Rep.Tr. 213); then the question:

"Q. Will you go into more detail about those places—what were they?

"A. Well, they were all existing as houses of prostitution.

"Q. Do you know who owned those?

"A. Bruce Cooper.

"The Court: Do you mean he owned the real estate?

"The Witness: He owned the place, the house.

"Q. By Mr. Osborne: What was his position in the house?

"Mr. Forno: Objected to, irrelevant and immaterial.

"The Court: Objection overruled." (Rep.Tr. 259)

It will be noted that the witness' testimony as to Cooper's ownership was received without objection. The above noted objection came after the testimony as to ownership was given. The first mention of "other offenses" appears in

the statement by the Court (Rep.Tr. 260) after the testimony of ownership of houses of prostitution had been received without objection upon the ground that such testimony constituted evidence of other and prior offenses, or without objection on any other ground. Defendant complains that such testimony was highly prejudicial. While this testimony of ownership of houses of prostitution was not complimentary, it tended to refute defendant's statement that he had never shared in any kind of money that was derived from prostitution.

Defendant also complains that the Court erred in denying motions for continuance before the trial and after the Government rested. He argues that:

"Manifestly, in view of the insufficiency of the indictment, appellant could not prepare to defend against undisclosed accusations of prostitutes until he learned who, when, where, it was claimed he was paid, and in what amount. This information did not come up until the trial was under way."

Defendant was not hurried into trial. The indictment was returned November 19, 1958, and the trial began March 3, 1959. The indictment clearly informed the defendant of that with which he was charged and the Court did not abuse its discretion in refusing continuances. Elkins v. United States, 9 Cir., 266 F.2d 588, 595.

There is no merit to the contention that the prosecutor engaged in prejudicial misconduct. Nor is there merit to the contention that the answer in Exhibit 1–B, "No, I never shared in any kind of money that was derived from prostitution," is limited or restricted by the question, namely, "$3,000 taken in from Friday to a Monday morning from prostitution. Did you share in that?"

The evidence being sufficient to sustain the verdict of the jury and finding no error, the judgment is affirmed.