UNITED STATES of America, Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

No. CR 05–07–M–DWM.

United States District Court, D. Montana, Missoula Division.

Nov. 29, 2005.

William W. Mercer, U.S. Attorneys, Washington, DC, for Plaintiff.

William B. Jacobson, Laurence A. Urgenson, Kirkland & Ellis LLP, Gary A. Winters, Mayer Brown Rowe Maw LLP, Washington, DC, Charles E. McNeil, Stephen R. Brown, Jr., Kathleen L. Desoto, Garlington, Lohn & Robinson PLLP, C.J. Johnson, Kalkstein Law Firm, Missoula, MT, Tyler D. Mace, Ronald F. Waterman, Gough Shanahan Johnson, Palmer A. Hoovestal, Hoovestal Kakuk & Fanning, Helena, MT, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen A. Jonas, Wilmer Cutler Pickering Hale, Boston, MA, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Defendants W.R. Grace and Co., a Connecticut corporation ("Grace"), and current and former Grace employees Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito and Robert C. Walsh, are charged by a ten-count Indictment with crimes arising from Grace's op-

eration of a vermiculite mine near Libby, Montana (the "Libby Mine"). The defendants are charged with conspiracy to violate the Clean Air Act and to defraud the United States in violation of 18 U.S.C. § 371 (Count I); violation of the Clean Air Act, 42 U.S.C. § 7413(c)(5)(A) (Counts II, III and IV); wire fraud in violation of 18 U.S.C. §§ 1343, 2 (Counts V and VI); and Obstruction of Justice in violation of 18 U.S.C. §§ 1505, 2 (Counts VII, VIII, IX and X). The charges relate to the Defendants' alleged role in the release and distribution throughout the Libby area of asbestos contaminated vermiculite.

This Order resolves Defendant Grace's motion for a bill of particulars pursuant to Rule 7(f), Fed.R.Crim.P., filed on behalf of all Defendants. Grace argues that the Indictment fails to provide information sufficient to allow the Defendants to understand the nature of the charges and to prepare a defense. It also claims the Indictment is vague and indefinite, so vague and indefinite that the Defendants could not successfully plead an acquittal or conviction in this case in bar of subsequent prosecution for the same conduct. The United States opposes the motion. My view is that a plain reading of the Indictment shows the government has the better argument. The motion is denied for the reasons set forth in this Order.

## II. Analysis

### A. Legal Standard for a Bill of Particulars

Rule 7(c)(1), Fed.R.Crim.P., requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." "The instrument must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the elements of the specific offense." *United States v. Martin*, 783 F.2d 1449, 1452 (9th Cir.1986) (citation omitted). "An

indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied." *Id.* (citation omitted).

If a defendant finds the indictment unclear or lacking the detail necessary to enable him to prepare an adequate defense, he may move pursuant to Rule 7(f), Fed.R.Crim.P., for an order directing the prosecution to file a bill of particulars. A bill of particulars serves three functions:

to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.1979) (citations omitted). A court must consider whether the indictment and all other disclosures made by the government adequately advise the defendant of the charges against him. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983) (citing *Giese*, 597 F.2d at 1180). Consequently, when the government provides full discovery there is no need for a bill of particulars. *Id.*

Rule 7(f) is not intended to serve as a vehicle for obtaining discovery from the government. *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir.1960). The rule exists to allow defendants to request that the charge, where necessary, be particularized; it should not be invoked to "force the Government to spread its entire case before the accused." *Id.* (citation omitted). The government is required to disclose the theory of the prosecution, but it cannot be forced to disclose all the evidence it intends to produce in support of its theory. *United States v. Ryland*, 806 F.2d 941, 942

(9th Cir.1986) (citing *Giese*, 597 F.2d at 1181). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (9th Cir.1981) (citing *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir.1980)).

## B. Information Requested by Defendants

In essence, the Defendants seek to know the details of how the Indictment will be proved with respect to each of the ten Counts alleged. They make twenty-six numbered requests, many of which contain several parts, resulting in a total of forty-six specific requests for information. The Defendants have grouped their requests into the following five categories:

1. Identification and explanation of the asbestos releases alleged in the Clean Air Act counts;

2. Identification of the overt acts that each Defendant allegedly committed in furtherance of each object of the conspiracy charged in Count I;

3. Disclosure of the government's theory regarding how documents transmitted by wire relate to the alleged wire fraud schemes;

4. Identification of the information that the Defendants allegedly failed to disclose to the government in their efforts to obstruct; and

5. Identification of unnamed locations, persons, and "others," and definition of other important, but vague, terms within the indictment.

For purposes of analyzing the requests, I will utilize the categories established by the Defendants.

The United States makes no effort to respond directly to any of the forty-six specific requests for information, instead arguing that its 49–page, 202–paragraph Indictment, coupled with its significant pretrial disclosures, provides the Defendants with the legally requisite notice and specificity against which the charges are measured. Those pretrial disclosures include copies of or access to the government's "entire evidentiary database," including:

1. Approximately 2,500,000 pages of documents produced by Defendant Grace in response to an EPA 104(e) request during the Superfund process.

2. All reports of interview, memoranda and transcripts of interviews produced by investigating agents working on behalf of the prosecution.

3. Transcripts of testimony before the Federal Grand Jury of all employees and former employees of Defendant W.R. Grace.

4. All written and recorded statements of the defendants in the possession of the prosecution.

5. Prior criminal records of all defendants.

6. All documents and information produced in response to Grand Jury subpoenas by the following persons or entities:

   a. Lincoln County Title Company

   b. St. John's Lutheran Hospital

   c. Melvin and Lerah Parker

   d. City of Libby

   e. Libby Public Schools

   f. W.R. Grace & Company

   g. Francis Landis

   h. Glacier Bank

   I. Sterling Title Services

   j. Smith–Barney, Inc.

   k. URS

   l. Noranda Minerals Corporation

   m. Minnesota Mining and Manufacturing Company

n. The Scotts Company

o. McGraw Hill Companies/SWEETS

p. Caplin Drysdale

7. Information and documents obtained by the prosecution from the following governmental agencies:

a. NIOSH

b. MSHA

c. Montana Department of Environmental Quality

d. OSHA

e. EPA

f. ATSDR

g. CPSC

8. The administrative record of the Superfund process between EPA and Defendant W.R. Grace concerning the clean-up at Libby, Montana.

9. An electronic copy of a database maintained by government contractor CDM containing raw sampling data created during the EPA Superfund Cleanup at Libby, Montana.

Moreover, the prosecution has, as required by the Scheduling Order, produced its trial witnesses and trial exhibits. Although the prosecution's characterization of its disclosures to date as exceeding that which is required by Rule 16, Fed.R.Crim. P., is accurate with respect to certain obligations, my recent rulings on the Defendants' many discovery motions require some additional production by the government. When those additional materials are produced, the Defendants will have been provided with full discovery. That production by the prosecution will take place in a timely manner, so I will proceed with my analysis under the assumption that the government has provided full discovery.

Even though full discovery obviates a need for a bill of particulars in this case, see *Giese*, 597 F.2d at 1180, the specific requests made by the Defendants are analyzed in detail below.

**1. Identification and explanation of the asbestos releases alleged in the Clean Air Act counts**

██ Counts II, III and IV allege violations of the Clean Air Act, 42 U.S.C. § 7413(c)(5)(A). Each Clean Air Act count incorporates Paragraphs 1 through 69 and 84 through 184 of the Indictment. Each count then contains a single paragraph setting forth the specific charge. Count II alleges:

That beginning on or about November 15, 1990, and continuing until the present, at Libby, within the State and District of Montana, defendant W.R. GRACE did knowingly release and caused to be released into the ambient air a hazardous air pollutant, namely, asbestos, and at the time, knowingly placed another person, namely the residents of the town of Libby and Lincoln County in imminent danger of death or serious bodily injury by providing and distributing asbestos contaminated vermiculite material to the community; and by causing defendant W.R. GRACE employees and their personal effects to be contaminated with asbestos, in violation of 42 U.S.C. § 7413(c)(5)(A), 18 U.S.C. § 2.

In relation to Count II, the Defendants make the following request for more information:

(a) Specify the time, date, and place of all knowing releases of asbestos alleged in [Count II];

(b) Identify the unnamed W.R. Grace employees that were involved I n the knowing releases of asbestos alleged in [Count II].

(c) Identify each person who was placed in imminent danger of death or serious bodily injury as the result of the

release of asbestos alleged in Count II.

Count III alleges:

That beginning on or about December, 1993, and continuing until on or about June 15, 2000, at Libby within the State and District of Montana, the defendants, W.R. GRACE, ALAN R. STRINGER, JACK W. WOLTER, and ROBERT J. BETTACCHI did knowingly release and caused to be released into the ambient air a hazardous air pollutant, namely, asbestos, and at the time knowingly placed another person in imminent danger of death or serious bodily injury by selling real property known as the "Screening Plant" to the Parker family, in violation of 42 U.S.C. § 7413(c)(5)(A), 18 U.S.C. § 2.

In relation to Count III, the Defendants make the following request for more information:

(a) Specify the time, date, and place of all knowing releases of asbestos alleged in [Count III];

(b) Identify each person who was placed in imminent danger of death or serious bodily injury as the result of the release of asbestos alleged in Count III.

Count IV alleges:

That beginning on or about November 15, 1990, and continuing until on or about the summer of 2000, at Libby within the State and District of Montana, the defendants, W.R. GRACE, ALAN R. STRINGER, JACK W. WOLTER, and ROBERT J. BETTACCHI did knowingly release and caused to be released into the ambient air a hazardous air pollutant, namely, asbestos, and at the time knowingly placed another person in imminent danger of death or serious bodily injury by leasing a property known as the "Export Plant" to the Burnetts and selling the property known as the "Export Plant" to the City of Libby, in violation of 42 U.S.C. § 7413(c)(5)(A), 18 U.S.C. § 2.

In relation to Count IV, the Defendants make the following request for more information:

(a) Specify the time, date, and place of all knowing releases of asbestos alleged in [Count IV];

(b) Identify each person who was placed in imminent danger of death or serious bodily injury as the result of the release of asbestos alleged in Count IV.

### a. Identification of the Dates and Locations of the Charged Releases and Explanation of How the Alleged Releases Occurred

The Defendants argue that the Clean Air Act counts lack sufficient specificity with regard to the dates and locations of the charged releases and the mechanism(s) of release. According to the Defendants, the Indictment as currently charged "would require the Defendants to investigate and defend every single *possible* date and time of every single *potential* release over the course of fifteen years." (Def.'s Br. at 4.)

With regard to Count II, Grace—the only Defendant charged in that count—complains that the Indictment alleges a time span of nearly 15 years and a place of occurrence covering the entire town of Libby. Grace asks that the United States be required to explain when, where and how often the releases alleged in Count II occurred. Without such an explanation, Grace argues, it is impossible to prepare an adequate defense. Grace purports to be left with "no idea whether the Government is alleging a single, distinct release, a series of releases over a fifteen-year period, or perhaps a continuous release throughout all of Lincoln County from 1990 through February 2005." (Def.'s Br. at 5.) The Defendants similarly request

that the government particularize the time and place of the releases alleged in Counts III and IV.

The specificity the Defendants seek, or, at any rate, that which the law requires, is available to them through a careful examination of the Indictment's many paragraphs.[1] The law does not require that the government set forth its theory in a single paragraph, and given the length of the Indictment, it is clear that it has not done so here. Rather, the government uses many paragraphs to establish the "when," "where" and "how" of the charges in Counts II through IV of the Indictment. A common sense reading[2] of the entire document is sufficient to inform the Defendants of the theory underlying the Clean Air Act counts.

The Defendants' Brief demonstrates an understanding of the government's theory, but it nonetheless argues that more detail is required: "It appears that the Government intends to offer evidence of some later conduct and/or natural occurrences that proximately caused the charged releases. If so, those causes must be identified so that the Defendants may be aware of how they allegedly committed the crimes charged." (Def.'s Br. at 8.) The Defendants are not entitled to more detail, however, unless the information they have been provided is in fact insufficient to allow them to prepare an adequate defense.

In support of their request for specific allegations of dates and places, Defendants cite cases in which a discrete release of asbestos is alleged to have occurred at a specific time and place and in a specific manner. *See, e.g., United States v. Technic Services, Inc.,* 314 F.3d 1031, 1038–40 (9th Cir.2002) (indictment alleged that at a single location over a ten-month period, defendants conducting a demolition project caused asbestos to be "stripped, removed, dislodged, cut, drilled, and disturbed" without complying with federal regulations).[3] The Defendants' demand

---

1. Additional details relevant to all Clean Air Act Counts can be found in the Indictment at ¶¶ 4, 13, 27, 61, 62, 117, 118, 121, 122, 123, and 126. Additional details with respect to Count II can be found at ¶¶ 23, 26, 133, 135, 138, 139, 143, 144, 145, 146, and 149. Additional details relating to Count III can be found at ¶¶ 14, 15, 16, 17, 21, 22, 29, 30, and 165. Additional details with respect to Count IV are available at ¶¶ 18, 19, 31, 32, 33, 34, and 35.

2. *See United States v. Burt,* 765 F.2d 1364, 1367 (9th Cir.1985) (Upholding the denial of a motion for a bill of particulars upon finding that "a common sense, practical reading of the indictment would have apprised [the defendant] of the specific charges against him.")

3. As further support for their argument that the charge in *Technic Services* was unambiguous, Defendants cite the following passage from that case: "workers dropped asbestos-containing material from great heights, generating visible clouds of dust." 314 F.3d at 1039. Defendants rely on that passage to argue that such specificity is typical of indictments for unlawful asbestos release. Had the Defendants quoted the entire sentence from the *Technic Services* opinion, it would be clear their reliance is misplaced. The entire quote is, *"There was testimony* that workers dropped asbestos-containing material from great heights, generating visible clouds of dust." *Id.* (emphasis added). The language quoted by Defendants did not, as they suggest, appear in the indictment, but rather was a part of the government's evidence at trial.

The Defendants' reliance on *United States v. Thorn,* 317 F.3d 107 (2nd Cir.2003), and *United States v. Pearson,* 274 F.3d 1225 (9th Cir. 2001), is similarly problematic. In an effort to show that the Indictment in this case is ambiguous by comparison to indictment in *Thorn,* Defendants offer the following quote from that case: "Thorn then directed workers to perform 'rip-and-run' or 'rip and skip' abatements, meaning that workers quickly ripped asbestos from pipes with little or no containment, resulting in the release of significant quantities of asbestos fibers[.]" 317 F.3d at 112. That sentence is taken from the appellate court's summary of the government's evidence at trial, and there is no indi-

for similar specificity in this case fails to appreciate that the legal standard for a bill of particulars is not whether the charge is as specific as charges in other asbestos cases. Rather, the question is whether the Defendants have been provided enough information to understand the charges and to prepare for trial. In my judgment, the paragraphs of the Indictment cited above are sufficient to establish the prosecution's theory, and the theory of the prosecution is all the Defendants are entitled to know. *See Ryland,* 806 F.2d at 942.

The Defendants' true objection seems to be to the theory of the government's allegations, not the lack of specificity in what is alleged. However, this is not the appropriate juncture, and a motion for a bill of particulars is not the appropriate vehicle, for the Defendants to question whether the Clean Air Act allows for a violation of the breadth and scope contemplated by the Indictment. My determination here is not concerned with whether the conduct charged constitutes a violation of the Clean Air Act; the concern is whether the Indictment puts the Defendants on notice of the charges and allows them to prepare an adequate defense. It does. The government has laid out its theory and supplied voluminous discovery; it is not required to provide anything more. The Defendants' motion for a bill of particulars is denied with regard to the demand for identification of the dates and locations of the charged releases and explanation of how the alleged releases occurred (Defendants' Request Nos. 18(a), 19(a) and 20(a)).

### b. Identification of the individuals placed in imminent danger by the releases charged in Counts II–IV

The Defendants ask that the United States be required to identify all individuals placed in imminent danger by the alleged releases of asbestos. Count II alleges that "the residents of the town of Libby and Lincoln County" were placed in imminent danger. Counts III (Screening Plant) and IV (Export Plant) allege that the Defendants placed "another person" in imminent danger. The Defendants argue that they are left to guess at the identities of the alleged victims of the releases, leaving them without enough information to investigate whether certain individuals were actually endangered by the charged conduct.

Here, the discovery provided by the United States obviates the need for a bill of particulars. The Defendants are on notice of the government's theory that their actions put others in danger; there is more specific information as to who may have been placed in danger in the government's evidentiary database, and those additional materials the Court has ordered the government to produce flesh out the question even more.

The Defendants argue that the discovery they have is not enough to obviate the need for a bill of particulars, citing *United States v. Davidoff,* 845 F.2d 1151, 1155 (2nd Cir.1988). In *Davidoff,* the defendant was charged with a RICO conspiracy spanning seven years and carried out through various extortion offenses "including, but not limited to" offenses against a single

---

cation that it appeared as an allegation in the indictment. *Id.*

From *Pearson* Defendants quote the following: "Less than the appropriate amount of water was used to wet the ·asbestos," "dry asbestos was 'all over the place,' " "some of the negative air machines were clogged," and

"bags of asbestos [were] outside the containment area, with asbestos material on the exterior surface of the bags." 274 F.3d at 1229. As in *Technic Services* and *Thorn,* those quotes summarize evidence presented at trial, not allegations in the indictment.

company called AEI. *Id* at 1153. The district court in that case denied the defendant's motion for a bill of particulars that would describe the unspecified RICO violations alleged in the phrase "including, but not limited to." *Id.* At trial, the government introduced evidence over the defendant's objection of additional extortions directed at three other companies not named in the indictment. *Id.* The defendant appealed his conviction and the reviewing court held that the trial judge abused his discretion "by denying a bill of particulars identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove." *Id.* at 1154.

*Davidoff* is inapposite here because the prosecution in that case did not provide the defendant will full discovery here as the government has. In *Davidoff,* the defendant was first informed of the existence of the uncharged extortion victims through Jencks Act material received during jury selection and trial. *Id.* at 1155. The court held that Jencks Act material turned over at the time of trial "may not be automatically relied on by the Government as an adequate substitute for a straightforward identification in a bill of particulars of the identity of the victims of offenses the government intends to prove." *Id.* The Defendants push advocacy limits when they distort the holding in *Davidoff,* characterizing the case as holding that " '*substantial pretrial discovery* ' may not automatically be relied upon by the Government...." (Def.'s Br. at 6 (emphasis added).) The disclosure of Jencks Act material during jury selection and trial does not constitute "substantial pretrial discovery," and the Defendants' suggestion otherwise is inac-

curate and misleading. Spin does not make a good argument.

The Defendants have not shown that an adequate defense requires disclosure of the identities of those placed in imminent danger by releases charged in the Clean Air Act counts. They are on notice of the government's theory and of the wrongful conduct with which they are charged. They have been provided full discovery, and have nearly a year to examine it and prepare their defense. The identities of the victims are a part of the government's evidence, not a part of its theory. The Defendants' motion for a bill of particulars is denied with regard to the demand for identification of individuals placed in imminent danger (Defendants' Request Nos. 1(a-b), 18(c), 19(b) and 20(b)).[4]

### c. The risk of double jeopardy on Clean Air Act charges

The final argument in support of the request for a bill of particulars relating to the Clean Air Act counts is that the counts as currently charged leave them exposed to further prosecution for Clean Air Act violations. The premise of the argument is that the government may introduce evidence at trial of specific releases, and that the Defendants may successfully rebut those charges only to face subsequent prosecution for other releases on different dates and at different locations. I find no merit in this argument.

There are two problems with the argument. First, the scenario described by the Defendants does not constitute double jeopardy. A defendant is placed in double

---

4. Defendants' Request No. 1 asks that the government be required to reveal the identity of each person who lived or worked in Libby who has been diagnosed with mesothelioma (Indictment, ¶ 54) and the identity of each Libby resident who has been diagnosed with asbestos-related pleural abnormalities as a re-

sult of exposure to tremolite from the Libby Mine (Indictment, ¶ 57). This information is not related to the elements of any count in the Indictment and is purely evidentiary in nature. For that reason it need not be supplied in a bill of particulars. *See Ryland,* 806 F.2d at 942; *Cooper,* 282 F.2d at 532.

jeopardy when he is forced to defend against the same offense more than once. If the government attempts to prove a release of asbestos at time A and place B, and the defendant successfully rebuts the charge, the government is not then barred from re-indicting the defendant to allege a release at time X and place Y. More importantly, the Indictment affords greater protection for the Defendants against subsequent prosecution because the allegations span many years. For example, in Count II Grace is charged with every release of asbestos it caused from November 1990 to the present. Grace may plead acquittal or conviction on Count II as a bar to any subsequent prosecution for releases in Libby during that span. The same goes for the time spans alleged in Counts III and IV.

Contrary to the Defendants' argument, the Indictment does not leave them exposed to subsequent prosecution for the conduct charged in the Clean Air Act counts. Furthermore, in this case, we deal only with this Indictment, no others.

**2. Identification of the overt acts that each Defendant allegedly committed in furtherance of each object of the conspiracy charged in Count I**

■ Count I of the Indictment charges: That beginning on or about 1976, and continuing until on or about 2002, at Libby, and other locations within and without the District of Montana, the defendants, W.R. GRACE, ALAN R. STRINGER, HENRY A. ESCHENBACH, JACK W. WOLTER, WILLIAM J. McCAIG, ROBERT J. BETTACCHI, O. MARIO FAVORITO, and ROBERT C. WALSH, and others known and unknown to the grand jury did knowingly combine, conspire and agree among themselves and others:

**OBJECTS OF THE CONSPIRACY**

a. To knowingly release and cause to be released into the ambient air a hazardous air pollutant, namely asbestos, and at the time knowingly placed persons, including: families of employees of W.R. GRACE Libby vermiculite mining and processing operations; residents of Libby, Montana and surrounding communities in Lincoln County; and others in imminent danger of death or serious bodily injury in violation of 42 U.S.C. § 7413(c)(5)(A).

b. To defraud the United States and others by impairing, impeding, and frustrating the governmental functions of the United States, including the United States Environmental Protection Agency (EPA) and the Department of Health and Human Services, specifically, the National Institute for Occupational Safety and Health ("NIOSH"); being federal agencies responsible for administering federal laws and regulations designed to protect public health and safety and the environment in violation of 18 U.S.C. § 371.

The Indictment then alleges 101 paragraphs of overt acts in furtherance of the conspiracy charged in Count I. Nonetheless, the Defendants ask that the United States be required to "[i]dentify the overt acts that each defendant allegedly committed in furtherance of the conspiracy." According to the Defendants, the deficiency in Count I is that it "fails to identify sufficient overt acts to connect *each* Defendant to *each object* of the conspiracy." (Def.'s Br. at 10.)

Defendants cite *United States v. Krasovich*, 819 F.2d 253 (9th Cir.1987) for the proposition that the government "must, at

a minimum, allege overt acts that each Defendant committed in furtherance of the conspiracy." (Def.'s Br. at 10.) In fact, the court in *Krasovich* wrote that the government need only allege "*an* overt act in furtherance of the conspiracy." 819 F.2d at 255 (emphasis added) (citation omitted). The Ninth Circuit has expressly rejected a requirement that the government allege all overt acts in furtherance of a conspiracy. *See Giese,* 597 F.2d at 1180. Moreover, the Defendants' request erroneously implies that a conspirator is tied to a conspiracy through his overt acts, when it is participation in the agreement, not a subsequent act in furtherance, that makes one a member of a conspiracy. *See* 18 U.S.C. § 371.

The Indictment apprises the Defendants of the federal offense with which they are charged and provides significant detail regarding the overt acts taken in furtherance of the conspiracy. The information provided in the charging document is augmented by disclosure of full discovery. A bill of particulars regarding the conspiracy charged in Count I is unnecessary. *See Giese,* 597 F.2d at 1180–81. The Defendants' motion is denied with regard to their demand for identification of more overt acts in furtherance of the conspiracy (Defendants' Request No. 3).

### 3. Disclosure of the government's theory regarding how documents transmitted by wire relate to the alleged wire fraud schemes

With regard to Counts V and VI alleging wire fraud, the Defendants ask that the government be made to disclose its theory about how the wire transmissions relate to the alleged fraud schemes. Both wire fraud counts in the Indictment incorporate Paragraphs 1 through 69 and 84 through 184. Count V additionally alleges the following:

That from on or about November, 1992 and continuing until late April, 2000, at Libby, within the State and District of Montana, the defendants W.R. GRACE, ALAN R. STRINGER, JACK W. WOLTER, and ROBERT J. BETTACCHI, having devised or intending to devise a scheme or artifice to defraud that is to obtain money from the Parkers and to avoid liability by selling property known as the "Screening Plant" to the Parkers without disclosing the health hazard associated with tremolite asbestos contamination on the property, did for the purpose of executing said scheme, on April 12, 2000 transmit or cause to be transmitted by means of wire, communications in interstate or foreign commerce, namely, a Letter of Intent, describing defendant W.R. GRACE's plan for cleaning the "Screening Plant" and the compensation the Parker's would receive, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

Questioning Count V the Defendants want the government to explain how the transmission of a Letter of Intent to the Parkers was intended to further the alleged scheme or artifice to defraud. The Defendants emphasize that the Letter of Intent describes a plan that appears to be to the Parkers' benefit, and seek an explanation as to how an apparently innocuous document can be transmitted in furtherance of a fraud scheme.

The prosecution has not failed to present its theory regarding Count V. The government alleges the existence of a scheme or artifice to defraud and alleges a wire transmission in furtherance of that scheme. Whether the government can show that such a scheme existed, and that the wire transmission was made in furtherance of that scheme, is a question of proof not to be decided at this stage. The Defendants are entitled to know the government's theory; they are not entitled to force the government to show in advance

of trial that it can prove the theory. *See Cooper*, 282 F.2d at 532.

Count VI alleges:

That from on or about 1994 and continuing until late July, 2000, at Libby, within the State and District of Montana, defendants W.R. GRACE, JACK W. WOLTER and ALAN R. STRINGER having devised or intending to devise a scheme or artifice to defraud, that is to avoid liability by selling and subsequently purchasing properties known as the "Mine site" and "Flyway" from KDC, Inc., did for the purpose of executing said scheme, on July 12, 2000, transmit or cause to be transmitted by means of wire, communications in interstate or foreign commerce, wiring instructions directing the transmission of payment for the purchase of KDC, Inc. stock, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.[5]

The Defendants complain that Count VI is "devoid of any detail explaining how one could attempt to avoid liability by selling and purchasing the same property." The essence of the argument is that the KDC transactions were not fraudulent, so they demand that the government explain its position to the contrary. The government has laid out the events that comprise the alleged fraud scheme and identified a wire transmission it contends was made in furtherance of the scheme. Nothing more is required of the government at this stage. There will be an opportunity to argue to the jury. The Defendants do not seem

confused as to what conduct the government seeks to punish; they strenuously dispute whether that conduct is illegal. Such disputes are not resolved through a motion for a bill of particulars.

For the reasons stated above, the Defendants' motion for a bill of particulars is denied as it relates to the Defendants' request for disclosure of the government's theory regarding how documents transmitted by wire relate to the alleged wire fraud schemes (Defendants' Request Nos. 21 and 22)[6].

**4. Identification of the information that the defendants allegedly failed to disclose to the government in their efforts to obstruct**

The second object of the conspiracy charged in Count I alleges that all Defendants conspired to:

defraud the United States and others by impairing, impeding, and frustrating the governmental functions of the United States, including the United States Environmental Protection Agency (EPA) and the Department of Health and Human Services, specifically, the National Institute for Occupational Safety and Health ("NIOSH"); being federal agencies responsible for administering federal laws and regulations designed to protect public health and safety and the environment in violation of 18 U.S.C. § 371.

Indictment, ¶ 71(b).[7]

In this instance, the Defendants want

**5.** Additional details regarding Count VI are provided in the following incorporated paragraphs of the Indictment: ¶¶ 36, 155, 168, 169, 170, 171, and 172.

**6.** The Defendants also ask that the government be required to identify what liability they are alleged to have attempted to avoid through the fraud schemes charged in Counts V and VI. In light of the background information provided in the Indictment and the gov-

ernment's disclosure of its evidentiary file, it is evident what liability the Defendants are alleged to have worked to avoid. It is not the purpose of a bill of particulars to require the prosecution to state the obvious.

**7.** The following paragraphs of the "Overt Acts" section of the Indictment are relevant to the second object of the conspiracy charged in Count I: ¶¶ 129, 131, 132, and 182.

the government to specify exactly what information defendants failed to disclose. According to them, the Indictment's allegations that the Defendants failed to disclose "all information" in their possession, or that they failed to disclose certain studies "among other information required by TSCA 8(e)," are too open-ended to allow the Defendants to craft a defense. The Defendants also claim that the allegations create the possibility of surprise at trial, presumably through the prosecution's introduction of some study or information not previously identified as having been in the Defendants' possession at the time of the agency request.

The concerns raised by the Defendants are nullified by the government's disclosure of full discovery. *See Giese,* 597 F.2d at 1180. The Defendants, supplied with the government's entire evidentiary arsenal and nearly a year to study it, have all of the information necessary to construct a defense. Moreover, such an opportunity to review the prosecution's evidence eliminates the risk of surprise at trial. The Defendants' motion for a bill of particulars is denied as it relates to the Defendants' request for identification of the information that the Defendants allegedly failed to disclose to the government in their efforts to obstruct (Defendants' Request Nos. 9–11, 16).

### 5. Identification of unnamed locations, persons, and "others," and definition of other terms within the indictment

■ The Defendants split this request into three sub-categories: (1) Request for definition of the terms "contaminated" and "health hazard" as used in the Indictment; (2) Request for an explanation as to how certain statements were allegedly false and misleading; and (3) Request for identification of unnamed co-conspirators, unnamed employees of Grace, unnamed

"others," and unidentified locations. Each category is addressed in turn below.

### a. Definition of the terms "contaminated" and "health hazard"

The Indictment alleges that locations in Libby were contaminated with tremolite asbestos as a result of Grace's operation of the Libby Mine (*See, e.g.,* Indictment, ¶¶ 149, 156–62, 165–66. 175, 180) and that the contamination presented a health hazard (Indictment, ¶¶ 158–62, 165–66). The Defendants ask that the United States be required to state by what standard it alleges the locations to be contaminated or to present a health hazard. They make no legal argument in support of this request. The proposition sounds as if the Civil Rules of Discovery are being applied. They are not. It is not a legal element of any of the charged offenses that the government show contamination or the presence of a health hazard. In the absence of any statutory basis for the government's use of those terms, the Defendants must rely on the standard common sense definitions; they are definitions which, when read in conjunction with the 202 paragraphs of the Indictment, are adequate to allow the Defendants to understand the government's theory. The request for a bill of particulars is denied in this regard.

### b. Request for an explanation as to how certain statements were allegedly false and misleading

The Government alleges that the Defendants obstructed justice by making false statements in Counts I, VII, VIII and X. Count I charges conspiracy to impede the governmental function of the United States and several agencies. Counts VII, VIII and X incorporate the allegations of overt acts in Count I and additionally allege the following discrete instances of ob-

struction of justice through false or misleading statements:

Count VII:

On or about November 23, 1999, in the District of Montana, defendants W.R. GRACE and ALAN R. STRINGER, did corruptly obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Environmental Protection Agency, an agency of the United States, by providing the following false and misleading information to the United States Environmental Protection Agency, to wit: that W.R. GRACE's vermiculite concentrate contained less than one percent tremolite asbestos and that historical asbestos contamination problems a[t] the Libby mine had been resolved in violation of 18 U.S.C. §§ 1505 and 1515(b), and 18 U.S.C. § 2.

Count VIII:

On or about February 22, 2000, in the District of Montana, defendants W.R. GRACE and ALAN R. STRINGER, did corruptly obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Environmental Protection Agency, an agency of the United States, by providing to the United States Environmental Protection Agency false and misleading information in defendant W.R. GRACE's response to an EPA CERCLA 104(e) Request for Information, to wit:

1. that W.R. GRACE did not provide vermiculite to the general public;

2. that W.R. GRACE employees did not regularly leave the mine with tremolite dust on their clothing;

3. that W.R. GRACE only informed EPA that it had provided vermiculite mill coarse tailings for use on the Libby High School running track, when in truth and in fact, W.R. GRACE had placed vermiculite mill coarse tailings at the Libby Junior High School running track and at the Plummer Elementary School ice skating rink;

4. that W.R. GRACE took actions to treat the roadway to the mine to minimize dust created by vehicular traffic, when in truth and in fact, W.R. GRACE used vermiculite mill tailings, to construct, surface and sand the roadway; and

5. that W.R. GRACE failed to inform EPA of air and environmental media sampling studies and results.

In violation of 18 U.S.C. §§ 1505 and 1515(b), and 18 U.S.C. § 2.

Count X:

On or about April 10, 2002, in the District of Montana, defendant W.R. GRACE did corruptly obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before the United States Environmental Protection Agency, an agency of the United States, by providing the following false and misleading information to the United States Environmental Protection Agency, to wit: in a letter to the Administrator of the EPA, stated the following: "Grace's expanded vermiculite, which was used in ZAI, poses no risk to human health or the environment;" "... [ZAI] contains biologically insignificant amounts of respirable asbestos fibers;" "... it is reasonable to expect that disturbance of [ZAI] will not result in hazardous levels of airborne asbestos fibers;" and "... there is no credible reason to believe that ZAI has ever caused an asbestos-related disease in anyone who has used in his/her home." In violation of 18

U.S.C. §§ 1505 and 1515(b), and 18 U.S.C. § 2.

With respect to these counts alleging false and misleading statements, the Defendants want the United States be required to explain how the statements are false and misleading and how the statements obstructed justice. A bill of particulars is unnecessary because the answer to both questions can be found in the Indictment itself and in the discovery provided by the government.

The defendants are not entitled to an explanation of how the statements charged are false and misleading because the Indictment itself demonstrates their alleged falsehood. Count VII charges that Defendants Grace and Stringer falsely stated to the EPA in 1999 that Grace's vermiculite concentrate contained less than one percent tremolite asbestos and that historical asbestos contamination problems at the Libby mine had been resolved. Paragraphs 37 and 38 of the Indictment allege that the EPA initiated an investigation of the Libby site in November of 1999, the same year Stringer and Grace are alleged to have stated that asbestos problems at the mine were resolved; that the site was subsequently declared a Superfund Site; and that the EPA had incurred $55,100,000.00 in clean-up costs by December 31, 2001.

Count VIII charges Stringer and Grace with several false statements in February 2000. Each allegation of falsehood in Count VIII is supported by charges contained in the "Overt Acts" section of Count I of the Indictment. See, e.g., ¶ 23 (alleging Grace allowed employees to take vermiculite home for their personal use, contravening the statement attributed to Grace and Stringer in ¶ 198(1)); ¶¶ 135–36, 138–140 (alleging employees carried vermiculite dust home on their clothing, contravening the statement attributed to Grace and Stringer in ¶ 198(2)); ¶¶ 141–44, 148–

49 (alleging placement of asbestos contaminated vermiculite at the Junior High School and at Plummer Elementary, contravening the statement attributed to Grace and Stringer in ¶ 198(3)); ¶¶ 84–127 (detailing studies conducted by Grace and others revealing the danger of tremolite asbestos which Grace and Stringer allegedly failed to provide to the EPA in ¶ 198(5)). The basis for the allegation of falsehood in ¶ 198(4) of the Indictment is contained within that subparagraph.

The false statements charged in Count X, i.e., that Grace's vermiculite poses no risk to human health or the environment, etc., are contradicted by the allegations in Paragraphs 84–127 of the Indictment. Those paragraphs allege that Grace's internal studies revealed a health hazard relating to tremolite asbestos and that external sources confirmed Grace's findings. The allegations provide a clear basis for the charge that Grace's statements in Count X are false. There is no reason to require the government to explain how the statements charged in Counts VII, VIII and X are false.

There is similarly no need to for the Court to order the United States to explain how the alleged false statements obstructed justice. The charges contained in Counts VII and VIII are supported by allegations of overt acts at ¶¶ 173–83 of the Indictment. Those paragraphs appear under the heading "Obstruction of EPA's Superfund Cleanup." Paragraph 184 of the Indictment alleges that the false statements made by Grace in its letter to the EPA Administrator were made "in response to a proposal by EPA to declare a 'public health emergency' for the City of Libby that would allow EPA to remove asbestos containing attic insulation from homes in Libby." This information is adequate to apprise the Defendants of the government's theory as to how the alleged-

ly false statements obstructed justice. The request for a bill of particulars is denied as it relates to the allegations of false and misleading statements.

### c. Identification of unnamed co-conspirators, unnamed employees of Grace, unnamed "others," and unidentified locations

The Defendants want the government to identify any unnamed co-conspirators, any Grace employees, any unnamed "others," and any unidentified locations referenced throughout the Indictment. The request seeks a level of detail that is not required. The Indictment need only present the government's theory of the case. Most information of the nature sought by the Defendants is part of the government's proof at trial and therefore off limits to a defendant seeking a bill of particulars. *See Ryland,* 806 F.2d at 942. Moreover, the government's disclosure of full discovery renders the Defendants' fears of surprise surprisingly fearful.

The Defendants ask that the government be forced to name each unidentified co-conspirator to the conspiracy charged in Count I. They urge the Court to apply the six-part test devised by the court in *United States v. Nachamie,* 91 F.Supp.2d 565 (S.D.N.Y.2000).[8] *Nachamie* is a district court case attempting to reconcile conflicting Second Circuit authority on whether a court should require identification of unindicted co-conspirators. I believe a better course here is to follow settled Ninth Circuit authority, specifically *Giese,* in which the court held that full discovery obviates the need for a bill of particulars. 597 F.2d

at 1180. The Defendants have the government's entire evidentiary arsenal and a list of every witness the government intends to call at trial. There is little risk that Defendants will be surprised by the revelation at trial of a mystery co-conspirator.

The same reasoning applies to the remainder of the Defendants' requests. The government has identified the theory of the prosecution and provided all of information it will use in its effort to prove its case. The Defendants have what they need to construct a defense and are shielded from the risk of surprise. The Defendants' motion for a bill of particulars is denied as it relates to their request for identification of unnamed locations, persons, and "others," and definition of other terms within the indictment (Defendants' Request Nos. 2, 4–8, 12–15, 17, 23–26).

### III. Order

The Indictment, combined with the government's significant pretrial disclosure of discovery and witness and exhibit lists, is adequate to (1) allow the Defendants to prepare a defense, (2) protect the Defendants from the risk of surprise at trial, and (3) plead their conviction or acquittal as a bar to subsequent prosecution for the same conduct. The Defendants are entitled to nothing more at this stage.

Accordingly, IT IS HEREBY ORDERED that the Defendants' motion for a bill of particulars (dkt # 179) is DENIED in its entirety.

---

8. The district court in *Nachamie* suggested that courts weigh the following factors in deciding whether to require the government to reveal unnamed co-conspirators:

(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation. 91 F.Supp.2d at 572.