845 F.2d 1151
 56 USLW 2662
 UNITED STATES of America, Appellee,
v.
Harry DAVIDOFF, Defendant-Appellant,
Salvatore Santoro, Frank Manzo, Henry Bono, Jr., Frank
Calise, John Russo, Heino Benthin, Pasquale
Raucci, Leone Manzo, and William Barone,
Defendants.
 Nos. 1084, 1085, Dockets 86-1523, 87-1035.
 United States Court of Appeals,
Second Circuit.
 Argued May 5, 1987.
Decided April 20, 1988.
 
 Herald Price Fahringer, New York City (Diarmuid White, Michael B. Pollack, New York City, on the brief), for defendant-appellant.
 Frank J. Marine, U.S. Dept. of Justice, Washington, D.C. (Andrew J. Maloney, U.S. Atty., Edward A. McDonald, Attorney-in-Charge, U.S. Dept. of Justice, Organized Crime Strike Force, Norman A. Bloch, U.S. Dept. of Justice, Brooklyn, N.Y., on the brief), for appellee.
 Before OAKES, NEWMAN and PIERCE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal concerns primarily the extent of the Government's obligation to provide notice in a bill of particulars of uncharged acts of racketeering it intends to prove to obtain a conviction for violation of the Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C. Sec. 1961 et seq. (1982 & Supp. IV 1986). The issue arises on an appeal by Harry Davidoff from a judgment of the District Court for the Eastern District of New York (Joseph M. McLaughlin, Judge) convicting him, after a jury trial, of one count of conspiracy to violate the RICO statute, in violation of 18 U.S.C. Sec. 1962(d), and four counts of extortion offenses, in violation of 18 U.S.C. Sec. 1951 (1982). Because we conclude that in the circumstrances of this case it was error not to grant the defendant's request for a bill of particulars, we reverse and remand for a new trial.
 
 Facts
 
 2
 This case concerns extortion perpetrated against air freight forwarders operating at John F. Kennedy International Airport (JFK). The extortion was orchestrated and carried out by members of the Lucchese Crime Family, which the Government alleged was a RICO "enterprise." 18 U.S.C. Sec. 1961(4). The extortionate payments were extracted in return for labor peace, frequently by threatening to have labor unions enforce to the hilt the onerous terms of their collective bargaining agreements. Once an employer made the requested payments, the unions moderated their insistence on compliance with the terms of the labor agreements.
 
 
 3
 Defendant-appellant Harry Davidoff was a vice-president of Local 851, International Brotherhood of Teamsters. He had previously founded Teamsters Local 295. These locals represented clerical workers and truckers, respectively, employed by air freight and trucking companies handling air freight business at JFK. There was evidence that Davidoff in practice had authority to make decisions concerning the actions of both unions.
 
 
 4
 The 28-count indictment originally charged Davidoff and nine co-defendants with a RICO conspiracy and various extortion offenses. Before trial, three co-defendants pled guilty, and the charges against one were severed. Five co-defendants pled guilty during the trial. Trial continued against Davidoff alone on a redacted indictment limited to the five counts that named him as a defendant--one count of RICO conspiracy and four counts of extortion offenses. The RICO conspiracy count alleged a "pattern of racketeering activity," 18 U.S.C. Sec. 1961(1), (5), consisting of acts of extortion, in violation of 18 U.S.C. Sec. 1951, and unlawful payments to unions, in violation of 29 U.S.C. Sec. 186 (1982 & Supp. III 1985). The RICO conspiracy count further alleged that it was part of the conspiracy to commit extortion offenses and that these offenses "included, but were not limited to," the violations set forth in the four remaining counts of the indictment. These four counts all alleged extortionate demands directed in one way or another at Air Express International Corp. ("AEI"). Two of these extortion counts charged a conspiracy and an attempt to extort money from AEI, Consolidated Freightways, Inc. ("CF"), and CF's subsidiary, CF Air Freight ("CFAF"). The theory of these two counts was that the defendants had threatened to block a proposed merger of AEI and CFAF unless they received money from the principals of the companies to the proposed merger. By virtue of their collective bargaining agreements, Locals 295 and 851 had the power effectively to block any merger that purported to enable a company acquiring AEI to use members of other unions to handle AEI's work. The other two extortion counts charged a conspiracy and a completed extortion of money from AEI alone. The theory of these two counts was that the defendants demanded and received payments from AEI primarily under threat of strict enforcement of the locals' collective bargaining agreements.
 
 
 5
 Prior to trial Davidoff and his co-defendants moved under Fed.R.Crim.P. 7(f) for a bill of particulars, asking the Government to "state with particularity the unspecified violations indicated [in the RICO conspiracy count] by the phrase 'but were not limited to.' " The Government opposed this request on the ground that the information sought was "evidentiary in nature." Judge McLaughlin denied this and most other aspects of the request for a bill of particulars, requiring the Government to supply information concerning only securities fraud counts, which did not name Davidoff as a defendant. United States v. Santoro, 647 F.Supp. 153, 188 (E.D.N.Y.1986). The District Judge's ruling did not deal explicitly with the request for identification of the unspecified extortion offenses. He noted that providing much of what was sought by the entire request for a bill of particulars would reveal the Government's proof and that some of the information requested was already contained in documents previously made available to the defendants.
 
 
 6
 At trial, over Davidoff's objection, the Government was permitted to introduce evidence of extortions directed against three air freight companies, Pandair, Randy International, and TAT, Inc. None of these companies had been identified in the indictment, and none of the extortions aimed at them involved AEI. The Government asserted that these extortions constituted other acts of racketeering. Defendant objected on the ground that he had not been informed that the Government would seek to prove extortions against these three companies. The objections were overruled, though the basis of admissibility was not specified. Later, in the course of denying a motion for a new trial, the District Judge indicated that the evidence of extortion against these three companies had been properly presented to prove the existence of a RICO enterprise, citing United States v. Bagaric, 706 F.2d 42 (2d Cir.), cert. denied, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983).
 
 
 7
 When the case was submitted to the jury, Judge McLaughlin charged that the element of a pattern of racketeering activity required a finding that the defendant agreed to commit at least two of the specified racketeering acts, referring to the four extortion offenses directed against AEI, which were alleged as separate counts in the indictment. The jury found Davidoff guilty of the RICO conspiracy count and the four extortion counts. He was sentenced to twelve years' imprisonment, fined $125,000, and ordered to forfeit $25,000.
 
 Discussion
 
 8
 The principles governing requests for a bill of particulars are well settled. A bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir.1987) (citations omitted) (per curiam). The prosecution need not particularize all of its evidence. United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir.1974). The decision to grant or deny a bill of particulars is within the sound discretion of the district court. United States v. Panza, 750 F.2d 1141, 1148 (2d Cir.1984).
 
 
 9
 These principles must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO. With the wide latitude accorded the prosecution to frame a charge that a defendant has "conspired" to promote the affairs of an "enterprise" through a "pattern of racketeering activity" comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope. In this case the indictment charges a RICO conspiracy of seven years' duration carried out through various extortion offenses. The indictment puts Davidoff on notice that he will be obliged to defend against extortionate schemes directed at one company, AEI, and companies associated with it in contemplation of a merger. At trial Davidoff is then confronted with evidence of extortions aimed at entirely different companies. Though we agree with the Government that even in a RICO case it is not obliged to disclose before trial all of its evidence, we believe the trial judge exceeded his discretion in this RICO prosecution by denying a bill of particulars identifying at least the victims of discrete extortionate schemes that the prosecution intended to prove. Cf. United States v. Bortnovsky, supra. We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial.
 
 
 10
 Bagaric, on which the Government relies, is not to the contrary. In that case one defendant objected to evidence of a 1978 plan to bomb a church. He contended that this plan had not been alleged as an act of racketeering. However, the indictment explicitly alleged a 1979 attempt to murder the priest of that church by mailing a bomb to him. Bagaric held that evidence of the prior plan to kill the priest by bombing his church was properly admissible. Since the defendant was on notice that he would have to defend against charges of attempting to kill the priest by means of bombing, there was no unfair surprise in not identifying before trial evidence of the planning of an earlier attempt. Moreover, and perhaps more important, the challenge in Bagaric was to the adequacy of the notice supplied by the indictment. We specifically noted that a claim concerning information needed for trial preparation "is more appropriately addressed to a bill of particulars." 706 F.2d at 61.
 
 
 11
 Nor can the Government excuse the lack of a bill of particulars by contending that information concerning Pandair, Randy International, and TAT was contained in Jencks Act statements of prosecution witnesses turned over to Davidoff, some during jury selection and some during trial. Though Jencks Act material may sometimes provide adequate notice of uncharged offenses that a defendant will be obliged to meet, especially if the material is made available sufficiently in advance of trial, see United States v. Rosenthal, 793 F.2d 1214 (relying on Jencks Act statement turned over several weeks before trial), modified on other grounds, 801 F.2d 378 (11th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987), such material may not be automatically relied on by the Government as an adequate substitute for a straightforward identification in a bill of particulars of the identity of victims of offenses that the prosecution intends to prove. Equally inadequate to furnish notice was the turnover in advance of trial of some 6,000 pages of material concerning wiretap applications and transcripts of wiretapped conversations. Some of the transcripts of tapes that the Government now asserts provided notice of the Pandair extortion were not included on a list furnished the defense identifying tapes to be used at trial. If anything, this omission gave Davidoff some reason to believe that the prosecution would not seek to prove the Pandair extortion. The references in the tapes that were identified for use at trial are too oblique to provide notice of the Pandair extortion. Moreover, these tapes contain no mention of Randy International or TAT.
 
 
 12
 One other matter requires brief mention since it may arise again upon retrial. The Government offered the testimony of Henry Hill, a long-time associate of Paul Vario, whom Hill described as a boss of a Lucchese Family crew. In response to defendant's objection, the Government represented in its proffer that Hill would say "that Harry Davidoff was partners with another member of the enterprise in running Kennedy Airport." Though Hill testified that he overheard members of the Lucchese Family discussing the need to speak with Davidoff about union problems at the airport, his testimony fell short of living up to its advance billing. With Hill's testimony now fully set forth in the trial transcript, it will be up to the trial judge at retrial to determine whether this testimony has sufficient probative force to outweigh the prejudice arising from Hill's account of activities in which Davidoff was not involved.
 
 
 13
 The judgment of the District Court is reversed, and the cause is remanded for a new trial.
 
 PIERCE, Circuit Judge, dissenting:
 
 14
 I agree with the majority that due process considerations would require this court to reverse Davidoff's conviction if the jury had convicted him of the RICO conspiracy charge on the basis of predicate acts not specified in the indictment or a bill of particulars. However, from my review, I conclude that the record demonstrates that the evidence relating to extortions at Pandair Airfreight ("Pandair"), Randy International ("Randy"), and TAT, Inc. ("TAT") was presented to the jury as evidence of the existence of a RICO enterprise, and not as evidence of additional predicate acts comprising the pattern of racketeering activity with which Davidoff was charged. Since I do not believe that the district court's partial denial of Davidoff's request for a bill of particulars was an abuse of discretion, I respectfully dissent.
 
 
 15
 * Davidoff was charged with conspiring to extort money and contractual rights from air freight businesses operating in the vicinity of JFK Airport which "included, but were not limited to, the violations alleged in Counts Four through Seven." Counts Four through Seven named three air freight companies, Air Express International ("AEI"), Consolidated Freightways, Inc. ("CF"), and CF Air Freight as victims of the extortion scheme charged against Davidoff. Several other counts, which did not name Davidoff, charged Hobbs Act violations involving still other air freight company extortion victims, but not Pandair, Randy, and TAT. In response, Davidoff and his codefendants filed a motion for an order, pursuant to Fed.R.Crim.P. 7(f), directing the government to furnish a bill of particulars stating, inter alia, "with particularity the unspecified violations indicated by the phrase [in Count One] 'but were not limited to.' " The district court denied this request, noting that "[m]uch of the information [defendants] seek to have the government particularize [was] already [made] available to them in [voluminous discovery materials]." United States v. Santoro, 647 F.Supp. 153, 188 (E.D.N.Y.1986). On appeal, Davidoff contends that the district court erred by receiving into evidence testimony of government witnesses Heino Benthin, John Russo, and Stuart Alan Kettle, relating to the extortion of companies not identified in the indictment. Davidoff argues that the district court's denial of a bill of particulars setting forth the evidence relating to Pandair, Randy, and TAT violated his fifth amendment right to a fair trial, because due process requires that the defendant in a criminal RICO proceeding be notified of the predicate acts with which he is charged.
 
 II
 
 16
 I agree that due process requires the government to notify the defendant in a criminal RICO proceeding, either by the express terms of the indictment or by means of a bill of particulars, of all the predicate acts that the government will attempt to prove at trial. Since the defendant is entitled to notice of the charges against him, it would be an abuse of discretion to deny him a bill of particulars setting forth the precise nature of these charges. See, e.g., United States v. Bortnovsky, 820 F.2d 572 (2d Cir.1987) (per curiam) (abuse of discretion to deny bill of particulars identifying which of defendants' insurance claims for burglary losses were fraudulent); United States v. Neapolitan, 791 F.2d 489, 500-01 (7th Cir.) (predicate acts to be proven at trial must be specified in the indictment), cert. denied, --- U.S. ----, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986).
 
 
 17
 Nevertheless, in my view, the district court did not abuse its discretion by denying Davidoff's request for a bill of particulars, because the testimony relating to Pandair, Randy, and TAT was mere evidentiary detail of the existence of a RICO enterprise. See, e.g., United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir.1974) (government is not required to disclose its evidence in advance of trial). As the majority notes, the district court did not specify during trial the basis upon which the evidence relating to Pandair, Randy, and TAT was received. However, as Judge McLaughlin stated during a post-trial sentencing hearing: "They may prove other acts to prove that there was, in fact, an enterprise and the TAT testimony came in for that purpose." See also Neapolitan, 791 F.2d at 501 (certain acts might be admissible as circumstantial evidence of defendant's membership in RICO conspiracy, even though inadmissible as predicate acts); United States v. Bagaric, 706 F.2d 42, 64 (2d Cir.) (evidence of criminal activity not specified in the indictment admissible as proof of defendant's membership in RICO enterprise), cert. denied, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983). In addition, the court instructed the jury that it could not find Davidoff guilty of conspiring to violate RICO unless it found him guilty of at least two of the following four predicate acts: (1) conspiracy "to obstruct commerce by means of the [1982-83] extortion of Air Express International and Consolidated Freightways," in violation of 18 U.S.C. Sec. 1951; (2) obstruction of "commerce by an attempt to commit extortion" against AEI and CF, in violation of 18 U.S.C. Sec. 1951; (3) conspiracy "to obstruct commerce by extortion" of AEI from 1983 to 1985; and (4) "obstruct[ing] commerce by extortion" against AEI from 1983 to 1984. The jury was not instructed to consider the incidents at Pandair, Randy, and TAT as predicate acts comprising part of the pattern of racketeering activity with which Davidoff was charged. Following deliberation, the jury found Davidoff guilty of all four of the predicate acts stated above; each juror was polled, and each concurred in the verdict. As I see it, the evidence relating to Pandair, Randy, and TAT was admissible to prove the existence of an enterprise, and was not presented to the jury as "uncharged acts of racketeering," as the majority contends. This being so, the district court's denial of the bill of particulars did not deprive Davidoff of his constitutional right to be informed of the predicate acts with which he was charged. In my view, the court merely exercised its discretion in not requiring the government to disclose its evidence relating to the existence of the enterprise.
 
 
 18
 The majority's approach creates a good deal of uncertainty. Although the majority states that "[w]e do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute," ante at 1154, it is difficult to discern precisely where the majority would draw the line. The majority's reasoning seems to suggest that, in order to avoid the prospect of having an appellate court reverse a RICO conviction, the government now labors under a burden of notifying the defendant of any evidence of the defendant's prior acts that will be presented at trial, regardless of the purpose for which the evidence is admitted under Fed.R.Evid. 404(b), as long as the prior acts could have qualified as predicate acts under 18 U.S.C. Sec. 1961.
 
 
 19
 As the Supreme Court has instructed, "[t]he reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relieve their disturbing experiences." United States v. Mechanik, 475 U.S. 66, 72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986). Of course, it is undeniably true that we are obligated to reverse a conviction "when an error ... has deprived a defendant of a fair determination of the issue of guilt or innocence." Id. For the reasons stated above, I believe that Davidoff did receive a fair determination. Accordingly, I respectfully dissent.