UNITED STATES of America

v.

Demario Devon NANCE, Defendant.

12–CR–235–A

United States District Court,
W.D. New York.

Signed March 7, 2016

Filed March 8, 2016

Thomas S. Duszkiewicz, Joel L. Violanti, U.S. Attorney's Office, Buffalo, NY, for Plaintiff.

A. Joseph Catalano, Niagara Falls, NY, Michael L. D'Amico, Buffalo, NY, for Defendant.

## DECISION AND ORDER

HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT JUDGE

This case is here on Defendant Demario Nance's pre-trial motions requesting, among other things, dismissal, particularization, discovery, suppression, and severance. *See* Docket 635 (Def's Mtn.). As discussed below, several of Nance's motions are foreclosed by the Court's prior adoption of Magistrate Judge McCarthy's reports and recommendations in this case.[1] *See* Docket 629. In those situations, the Court notes where Nance has joined (and, therefore, preserved) arguments made by his co-defendants. As further discussed below, the Court largely denies Nance's motions as either moot, premature, or not supported by the relevant law. The Court will, however, grant Nance's motion requesting that the Government provide limited particularization concerning the date Nance is alleged to have first agreed with others to conduct the affairs of the alleged enterprise through a pattern of racketeering activity.

## BACKGROUND

The Court assumes familiarity with this case and its procedural history. As background to Nance's motions, however, the Court briefly summarizes the Government's allegations. *See* Docket 198.

The twenty-one-count superseding indictment in this case involves the LRG–P gang, which allegedly operated around the Broadway–Fillmore area of Buffalo from approximately 2009 until 2012. The Gov-

---

1. Because Nance's current counsel was appointed after Magistrate Judge McCarthy issued his reports and recommendations, and to ensure that this large, multi-defendant case proceeds steadily, Nance's counsel was directed to file pre-trial motions before this Court, rather than before Magistrate Judge McCarthy.

ernment alleges that LRG–P engaged in narcotics trafficking and violence, including murder. The Government further alleges that LRG–P maintained several "trap houses" in the Broadway–Fillmore area, which the gang allegedly used to process and distribute cocaine.

Count 1 of the superseding indictment, brought against fourteen of the fifteen original defendants, alleges a RICO conspiracy with twenty-three overt acts.[2] The alleged overt acts fall into three broad (and sometimes overlapping) categories: (1) maintaining a number of "trap houses"; (2) planning to murder a rival gang member; and (3) processing and distributing cocaine and cocaine base. Count 2, brought against all defendants, alleges a conspiracy to possess, with intent to distribute, cocaine and cocaine base. Many of the remaining nineteen charges are the same as the overt acts alleged in furtherance of the RICO conspiracy.

Nance has been charged in three counts: (1) Count 1, alleging a RICO conspiracy, (2) Count 2, alleging a conspiracy to possess, with intent to distribute, cocaine and cocaine base, and (3) Count 21, alleging that Nance and eleven other defendants maintained a drug-involved premises.

## DISCUSSION

Nance has made a number of motions, and the Government has made a motion

for reciprocal discovery. The Court addresses each motion in turn.

### 1. Motion to dismiss

As noted, Nance has been charged in three of the superseding indictment's twenty-one counts: Count 1 (alleging a RICO conspiracy), Count 2 (alleging a narcotics conspiracy), and Count 3 (alleging that Nance and others maintained a drug-involved premises).

■■■ Nance joins in his co-defendants' earlier motions to dismiss, as Nance puts it, "the indictment," without identifying any particular count(s) Nance seeks to dismiss. To the extent that Nance has joined in his co-defendants' motions to dismiss Counts 1 and 2 on the grounds of vagueness and facial insufficiency, the Court has previously denied those motions. *See* Docket 629 at 4–6. Nance makes no new arguments for dismissal of those Counts, and the Court therefore denies Nance's motion to dismiss Counts 1 and 2.[3]

### 2. Bill of particulars

■■■ Nance next moves for a bill of particulars. His argument is as follows: Count 1 alleges a RICO conspiracy from 2009 until January 23, 2012, but Nance was (1) incarcerated from 2005 until January 2010, (2) at a half-way house in Rochester, New York from January 2010 until

**2.** To prove a RICO conspiracy under 18 U.S.C. § 1962(d), the Government need not prove "overt acts" as it must, for example, under the general conspiracy statute, 18 U.S.C. § 371. *See Salinas v. United States,* 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("There is no requirement [in § 1962(d)] of some overt act or specific act ... unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed 'an act to effect the object of the conspiracy.' ") (quoting 18 U.S.C. § 371). As Magistrate Judge McCarthy has observed in this case, however, "[w]hile the pleading of

overt acts may be unnecessary" to a RICO conspiracy allegation, "these additional allegations do not render the Superseding Indictment defective." Docket 487 at 10.

**3.** Count 21 of the superseding indictment charges Nance with maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1). Nance moved generally to dismiss the charges against him, but he does not state any grounds for dismissing Count 21. Pursuant to Federal Rule of Criminal Procedure 7(c), the Court finds that Count 21 is facially valid. The Court therefore denies Nance's bare motion to dismiss the Count.

March 2010, (3) on house arrest from March 2010 until July 2010, and (4) on an 8:00 p.m. curfew from October 2010 until December 2010, and again from May 2011 until July 2011. Given these facts, Nance argues that he is "entitled to a particularization of when he allegedly agreed with others to conduct the activities on behalf of the alleged [RICO] enterprise." Def's Mtn. ¶ 31. Nance then requests a lengthy and detailed itemization of the Government's anticipated evidence.

 The basic question when deciding whether to order a bill of particulars is "whether the information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F.Supp. 449, 451 (S.D.N.Y.1990). A bill of particulars is not a means for a defendant to obtain a preview of the Government's evidence at trial. Rather, a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.1990) (internal quotation marks and citations omitted).

 A bill of particulars is, therefore, typically appropriate only where the indictment is so vague as to risk "unfair[ ] surprise[ ] at trial"—for example, if the indictment gives the defendant no way of knowing what evidence the Government might introduce to prove its allegations. *Id.* In addition to this fairness rationale, a bill of particulars may also be necessary to allow a defendant to "interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). It is the defendant's burden to show this necessity. *United States v. Duarte*, 2014 WL 29366 at *1 (W.D.N.Y. Jan. 3, 2014).

 The allegations in this case present an additional consideration: the principles governing a bill of particulars "must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). Indeed, in cases alleging a RICO conspiracy, the Government may have an "obligation to particularize the nature of the charge" more so than the Government "might ... in the prosecution of crimes of more limited scope." *Id.* To be clear, this does not mean that a bill of particulars is required every time the Government alleges a RICO conspiracy; it just means that, when the Government *does* allege a RICO conspiracy, the risks a bill of particulars are meant to guard against—especially unfair surprise and in inability to prepare for trial—are heightened. *See id.* ("We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortions against unrelated companies, allegations not made prior to trial.")

With these principles in mind, the Court notes that it has previously affirmed Magistrate Judge McCarthy's decision denying Nance's co-defendants' motions for bills of particulars, because the twenty-six-page superseding indictment in this case "provide[s] sufficient detail regarding the racketeering conspiracy, the purpose and goals of the enterprise, and the specific overt acts alleged." Docket 629 at 7. Moreover, as the Court previously noted, the superseding indictment's detail, combined with the Government's Rule 16 discovery (which the Government states is complete, *see infra* at 8–9), provides adequate notice of the Government's allegations concerning the alleged RICO conspiracy. *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir.

1999) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.") Of course, Rule 16 discovery, along with the Government's provision of Jencks Act and *Brady* material, "may not be automatically relied on by the Government as an adequate substitute for . . . a bill of particulars." *Davidoff,* 845 F.2d at 1155. But when complete (or near-complete) discovery is combined with an indictment that provides enough detail to prevent surprise and allow a defendant to interpose a double jeopardy objection, a bill of particulars is not required.

Thus, the Court reaches the same conclusion that Magistrate Judge McCarthy did for Nance's co-defendants: as a general matter, Nance is not entitled to the extensive particularization he seeks (Docket 635 ¶¶ 2–24), which would amount to an "improper" attempt "to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *United States v. Muyet,* 945 F.Supp. 586, 599 (S.D.N.Y.1996) (quotation marks omitted).

██ The Court will, nonetheless, order limited particularization as follows: the Government shall provide Nance with particularization concerning the date he is alleged to have first agreed with others to conduct the affairs of the alleged enterprise through a pattern of racketeering activity. Magistrate Judge McCarthy previously ordered the Government to provide identical particularization to one of Nance's co-defendant, Alexis Mills, who,

like Nance, was incarcerated for a period of time during the alleged conspiracy.[4] *See* Docket Nos. 487 at 41 & 629 at 8 n.4.

To be sure, Nance does not explain how, based on the law discussed above, the fact of his incarceration or subsequent house arrest is relevant to whether a bill of particulars is necessary. Likewise, the Court's review of the superseding indictment does not reveal how those facts have any bearing on Nance's ability to prepare for trial. Nonetheless, the Government has not specifically responded to this argument. Given that fact, plus Magistrate Judge McCarthy's prior particularization order as to Defendant Mills based on nearly identical facts (an order to which the Government did not object), the Court directs the Government to provide Nance with the limited particularization described above.

### 3. Discovery
#### A. Rule 16 discovery

██ Nance next moves for discovery pursuant to Federal Rule of Criminal Procedure 16(a). The Government responds that it has provided discovery "constituting all material presently within its possession that is within the purview of Rule 16" and that the Government "believes that discovery is thereby complete." Gov't's Reply ¶ 11. *See also id.* ¶ 12 (Government's representation that it "will comply with the defendant's request for expert testimony pursuant to Rule 16(a)(1)(G)"); *id.* ¶ 14 ("It is also agreed that the government will provide defendant with his arrest record."). Based on these representations, the Court denies Nance's motion for Rule 16 discovery as moot.[5] The Government is

---

4. Magistrate Judge McCarthy also based his order on the fact that Mills was a juvenile during the date of the alleged conspiracy. *See* Docket 487 at 41. Nance does not make a similar argument.

5. The Government also notes that it "declines to provide . . . other materials requested in [Nance's] motions as outside the purview of Rule 16." Gov't's Reply ¶ 11. Nance does not respond to this argument. The Court therefore considers the argument to have been waived.

reminded, however, of its continuing duty to disclose pursuant to Rule 16(c).[6]

### B. Jencks Act material

■ Nance makes what appears to be a motion for immediate disclosure of Jencks Act material. Def's Mtn. ¶ 54. The Government responds that it will disclose such material "no later than one week prior to the commencement of trial." Gov't's Reply ¶ 21.

"Courts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." *United States v. Morgan*, 690 F.Supp.2d 274, 285 (S.D.N.Y.2010). The Government may, however, agree to produce such material earlier than it is required to do under the Jencks Act—that is, prior to a witness's "direct examination in the trial of the case." 18 U.S.C. § 3500. The Government has agreed to do so in this case, and the Court has no reason to think that the Government will not abide by its representation, nor that the Government misunderstands its obligations under the Jencks Act. Nance's motion for immediate disclosure of Jencks Act material is therefore denied without prejudice.[7]

### C. Evidence offered pursuant to Federal Rule of Evidence 404(b)

■ Nance next moves for disclosure of any evidence the Government intends to offer pursuant to Federal Rule of Evidence 404(b). Def's Mtn. ¶¶ 49–51. Rule 404(b), however, provides no basis for Nance's motion. Rule 404(b) requires just two things: (1) that, "before trial," the Government "provide reasonable notice" of its intended Rule 404(b) evidence, and (2) that the Government provide notice of "the general nature of any such evidence." Fed. R. Evid. 404(b)(2)(A) & (B).

These requirements do not translate into a rule that the Government *immediately* identify the *particular* Rule 404(b) evidence it intends to use at trial. The Court expects that the Government will comply with Rule 404(b)'s requirements if it intends to offer Rule 404(b) evidence at trial. But at this time, with trial not scheduled to begin for nearly two months, Nance's motion is premature. The motion is therefore denied without prejudice.

### D. *Brady* material

■ Nance also moves for "immediate disclosure" of material subject to disclosure under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. *See* Def's Mtn. ¶¶ 61; 70–73. The Government responds that, "[a]t the present time, [it] is not in possession of any 'exculpatory' material within the contemplation of *Brady*, but does acknowledge its continuing duty under *Brady* to produce such material, if and when it is aware of it." Gov't's Reply ¶ 19. Based on this representation, Nance's motion for

---

**6.** To the extent that Nance moves to inspect the evidence the Government intends to use at trial, the Government states that, pursuant to Rule 12(b)(4)(B), Nance's counsel may "examine such material in the custody of the FBI." Gov't's Reply ¶ 13. Although not explicitly stated, the Court assumes that the Government will permit Nance's counsel to inspect any evidence that falls within the coverage of Rule 16(a)(1)(E).

**7.** To the extent Nance moves for production under the Jencks Act of Government agents' rough notes (*see* Def's Mtn. ¶ 54 (requesting "notes or memoranda and the like reflecting the substance of statements of witnesses")), such notes "need not [be] preserve[d]" if "agents incorporate them into formal reports." *United States v. Elusma*, 849 F.2d 76, 79 (2d Cir.1988). *See also United States v. Barlin*, 686 F.2d 81, 92 (2d Cir.1982) (where an agent's "notes were made part of the agent's formal report," which was produced to the defendant as Jencks Act material, "the notes need not have been preserved and their destruction violated no Jencks Act right").

immediate disclosure of exculpatory *Brady* material is denied as moot.

▪ The Government also responds to Nance's motion for so-called "impeachment *Brady*" material—that is, information subject to disclosure under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[8] The Government states that it will produce such material "no later than one week prior to the commencement of trial," at the same time the Government intends to produce any Jencks Act material. Docket 648 ¶ 21. Although Nance has moved for immediate disclosure of *Brady* material, "as a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa (In re United States),* 267 F.3d 132, 146 (2d Cir.2001). The timing of the Government's disclosure obligations under *Brady* is, instead, governed by a less rigid rule: the Government satisfies its *Brady* obligations when it provides *Brady* material "in time for its effective use." *Id.* at 144. Thus, at present, there exists no basis to order immediate disclosure of *Brady* material.

▪ Finally, the Government argues that many of the items listed in Nance's motion do not, in fact, fall within the coverage of *Brady.* Docket 648 ¶ 20. Neither the Court nor Nance presently have any basis to say whether evidence in the Government's possession is *Brady* material. It is, instead, the Government's responsibility to determine whether it is in possession of *Brady* material. *See Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (observing that "the prosecution . . . alone can know what

is undisclosed," but noting that this responsibility "must also be understood as imposing a corresponding burden . . . . to learn of any favorable evidence known to the others acting on the government's behalf in the case"); *Coopa,* 267 at 143 ("The prosecutor . . . cannot await the outcome [of trial] and must therefore make a prediction before trial as to how the nondisclosure of favorable evidence will be viewed after the trial.")

Based on the Government's representations (*see* Gov't's Reply ¶¶ 19–21), as well as the law discussed above, Nance's motion for immediate disclosure of *Brady* material is denied without prejudice. The Government is, of course, reminded of its continuing obligations under *Brady.*

### E. Disclosure of "GPS monitoring records"

▪ As part of his motion for immediate disclosure of *Brady* material, Nance also moves for "all records of [his] GPS monitoring" from his time on post-release supervision in 2010 and 2011. Def's Mtn. ¶¶ 74–77. The Government responds that Nance's post-release supervision "amounted to periodic EMS with curfew, but had no location information component." Gov't's Reply ¶ 19 n.8. The Government does not explain this in any more detail, but Nance's motion appears to suggest that such "GPS monitoring" could possibly indicate that Nance was (or was not) in certain locations during the time period at issue in the indictment.

The parties provide very little information about the nature of these records or what they might reveal. Nonetheless, to the extent that such records (if they exist) fall within the coverage of *Brady,* the Government is reminded of its obligation to

---

**8.** The Court uses the term *"Brady* material" to refer to both "traditional" exculpatory *Brady* material and so-called *Giglio* material. *See United States v. Jackson,* 345 F.3d 59 n. 5 (2d Cir.2003) (observing that *"Giglio* and *Bra-*

*dy* are closely intertwined and differ chiefly as to the general purpose of the evidence favorable to the accused (exculpatory or impeachment)").

disclose such records "in time for [their] effective use." *Coppa*, 267 F.3d at 144.

### F. Evidence concerning hearsay declarants or declarants of non-hearsay statements under Federal Rule of Evidence 801(d)(2)

 Nance moves for discovery of evidence related to hearsay statements the Government intends to introduce at trial, as well as evidence related to non-hearsay statements the Government intends to offer pursuant to Federal Rule of Evidence 801(d)(2)(E).

First, Nance moves for *Brady* material concerning hearsay declarants (or declarants of non-hearsay statements offered under Rule 801(d)(2)) whose statements the Government intends to offer at trial. *See* Def's Mtn. ¶ 70(u). *See also* Fed. R. Evid. 806. To the extent the Government is in possession of any such evidence, the Government has stated that it will makes its disclosures "no later than one week prior to the commencement of trial." Gov't's Reply ¶ 21. *See also Coppa*, 267 F.3d at 144 (the government must disclose *Brady* material "in time for [its] effective use"). Based on this representation, Nance's motion is denied without prejudice.

 Nance also moves for "[e]ach and every statement of a co-conspirator" the Government intends to offer to demonstrate the existence of a conspiracy, as required by Rule 801(d)(2)(E). *See also Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). However, unless such statements are otherwise discoverable (for instance, under *Brady* or the Jencks Act[9]), there is simply nothing in Rule 801(d)(2)(E) or the Federal Rules of Criminal Procedure that authorize the Court to order the disclosure Nance requests. *See In re United States*

*(United States v. Gallo)*, 834 F.2d 283 (2d Cir.1987) (granting Government's petition for a writ of mandamus and vacating district court's discovery order, "professedly made pursuant to Fed. R. Crim. P. 16, Fed. R. Evid. 801, and the court's 'inherent power to require appropriate discovery,'" which "required the Government to produce all oral statements made by the defendants and co-conspirators that the Government planned to offer at trial as admissions of a defendant"). Nance's motion is therefore denied.

### 4. Disclosure of grand jury instructions

 Nance next makes a one-sentence motion for "[t]he legal instructions provided to the grand jury." Def's Mtn. ¶ 11. It is well settled that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 220, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). And it is equally "well-settled that hope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied" in Federal Rule of Criminal Procedure 6(e). *United States v. Smith*, 105 F.Supp.3d 255, 261 (W.D.N.Y. 2015) (quotation marks omitted).

 Thus, as with requests to inspect grand jury minutes, a request to inspect grand jury instructions "'is rarely granted without specific factual allegations of government misconduct.'" *Id.* (quoting *United States v. Torres*, 901 F.2d 205, 233 (2d Cir.1990)). Nance provides absolutely no reason why he should be permitted to review the legal instructions provided to the grand jury. He therefore does not begin to approach the sort of particular-

---

9. To the extent that such statements are Jencks Act material, the Court expects that the Government will produce such statements at the same time it produces the rest of its Jencks Act material, that is, "no later than on week prior to the commencement of trial." Gov't's Reply ¶ 21.

ized need typically required to grant such a motion. The motion is accordingly denied. For the same reason, Nance's request for "[a] statement of the extent of use of 'summarized' testimony, or hearsay testimony" (Def's Mtn. ¶ 11) is also denied.

### 5. Disclosure of informant identity and information

■ Nance next moves for the identities of, and information about, the Government's informants. Def's Mtn. ¶¶ 63–64. The Government responds that it "declines" to provide this information because "no basis has been asserted by [Nance] to warrant compliance with such a request." Gov't's Reply ¶ 16.

■ "The [G]overnment generally enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" *United States v. Jackson,* 345 F.3d 59, 69 (2d Cir.2003) (quoting *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)). This privilege is qualified, however: " 'where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause,' the 'fundamental requirements of fairness' require that 'the privilege must give way.'" *Id.* (quotation marks and brackets omitted) (citing *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623)). In those cases, the Court must " 'balance the public interest in protecting the flow of information [to law enforcement] against the individual's right to prepare his defense,' based on 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *Id.* In short, there is "no fixed rule with respect to disclosure." *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623.

Nance's only argument for disclosure is that, "[i]n order to prepare an adequate defense," his counsel must be permitted "to interview [the Government's informants] and otherwise investigate their allegations, biases, and benefits derived from cooperating with the government." Def's Mtn. ¶ 64. Such a conclusory statement is inadequate to meet Nance's burden of showing that an "informant's testimony is . . . material to the defense." *United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.1988). Nance must demonstrate that an informant would do more than "merely . . . cast doubt on the general credibility of one of the Government's witnesses." *Id.*

Instead of making these showings, Nance's request largely amounts to a generalized request for information about the Government's informants. He does not, for example, even identify *which* informants he seeks information about, despite stating that "[r]eview of material disclosed to date reveals that many of the informants referred to were participants in the criminality alleged in the Indictment." Def's Mtn. ¶ 63. Without a showing on even such a basic issue, Nance cannot demonstrate that disclosure is "relevant and helpful" to his defense, nor can he show that disclosure "is essential to the fair determination of [his] cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623. Nance's motion for the identities of, and information about, the Government's informants is therefore denied.

### 6. Suppression

■ Nance next makes two suppression motions. He first joins in his codefendants' motions to suppress evidence resulting from Title III wiretaps. Def's Mtn. ¶ 66. The Court previously adopted Magistrate Judge McCarthy's recommendation that those motions be denied (*see* Docket 629 at 6–7), and Nance presents no new arguments for suppression. Nance's motion is therefore denied.

■ Nance also moves to suppress "the physical search of [his] home on two occasions." Def's Mtn. at 19. Nance offers no detail regarding this request. Similarly, the Government states that it "is unaware of the physical search of [Nance's] home on two occasions." Gov't's Reply ¶ 18. In any event, as the Government notes, Nance "has neither defined, nor presented, an affidavit based on personal knowledge to establish his . . . standing" to make this motion. *Id.* This motion is therefore denied.

### 7. Severance

■ Nance's final substantive motion requests that the Court sever his trial from his co-defendants' trials. Federal Rule of Criminal Procedure 14(a) allows a court to sever co-defendants' trials if a joint trial "appears to prejudice a defendant." Given, however, that federal courts have "a preference . . . for joint trials of defendants who are indicted together," *Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), a defendant seeking severance bears an "extremely difficult burden." *United States v. Bellomo,* 954 F.Supp. 630, 649 (S.D.N.Y. 1997) (internal quotation marks omitted). As a result, if multiple defendants have been properly joined under Rule 8(b), severance is typically appropriate in only limited circumstances: "a district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or if a joint trial would "prevent the jury from making a reliable judgment about" a particular defendant's "guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

■ Nance identifies no "specific trial right" that might be compromised by joint trial. His argument is instead that a joint trial would result in spillover prejudice: that evidence of his co-defendant's alleged conduct might "prevent the jury from making a reliable judgment" about his own "guilt or innocence." *Id.* Spillover prejudice may justify a severance, however, only where there is a risk that "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. Put another way, for purposes of Rule 14(a), a defendant cannot be unfairly prejudiced by evidence the Government offers to prove the crimes with which the defendant is charged. *See United States v. Diaz,* 176 F.3d 52, 103 (2d Cir.1999) (holding that severance based on alleged spillover prejudice was not justified where "such [allegedly prejudicial] evidence would have been admissible against all . . . defendants [charged with RICO violations] even if each had been tried separately").

Nance argues that he would suffer from spillover prejudice because he "did not participate in any act of violence" alleged in the superseding indictment, he "did not have any knowledge of any act of violence which was perpetrated during th[e] alleged conspiracy," and because the Government does not allege that he participated in such acts or had such knowledge. Def's Mtn. ¶¶ 81–83. Nance therefore argues that a joint trial with co-defendants who *have* been charged with engaging in violent acts will cause the "jury to paint Mr. Nance with the same brush" as Nance's allegedly violent co-defendants. *Id.* ¶ 84.[10]

---

10. Nance also makes a conclusory argument that "[s]everance is warranted in this case due to the antagonistic and mutually exclusive defenses that will be set forth by co-defen-

dant's counsel during trial." Def's Mtn. ¶ 79. The Court first notes that the Supreme Court has rejected "a bright-line rule mandating

 This argument fails, however, because the alleged violent acts are charged as overt acts of the alleged RICO conspiracy with which Nance is charged. A defendant charged with a RICO conspiracy "need not commit or even agree to commit the predicate [racketeering] acts," but, rather, " 'he must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense.' " *United States v. Cain*, 671 F.3d 271, 291 (2d Cir.2012) (quoting *Salinas v. United States*, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)) (brackets omitted). The Second Circuit has therefore "recognized that, in deciding whether a defendant is guilty of RICO conspiracy, the jury must consider the predicate acts charged against the defendant and his alleged co-conspirators to determine whether the charged predicate acts were, or were intended to be, committed as part of that conspiracy." *Id.* Thus, to be convicted of a RICO conspiracy, "one must be shown to have possessed knowledge of only the general contours of the conspiracy." *United States v. Applins*, 637 F.3d 59, 75 (2d Cir.2011). *See also Cain*, 671 F.3d at 291 ("[A] jury may convict a defendant of conspiracy even when the defendant does not know the full extent of the conspiracy."); *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir.2000) ("[W]e need inquire only whether an alleged conspirator knew what the other conspirators were up to or whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise.") (quotation marks and brackets omitted).

In this case, even if the Government does not allege that Nance committed any of the violent acts alleged in the RICO conspiracy charge, such evidence would still likely be admissible against Nance, as well as his co-defendants, as evidence of the scope of the alleged RICO conspiracy. Thus, severance is not warranted. To be clear, the Court offers no opinion at this time on whether it would admit such evidence against Nance; that is a matter better addressed at or shortly before trial. The Court holds only that Nance is not entitled to severance based on evidence that is relevant to a crime with which Nance and his codefendants are charged.

### 8. Motion to join in other motions

 Finally, Nance moves to join in his co-defendants' motions, "insofar as the grounds for the motions and relief sought are potentially applicable" to Nance. Def's Mtn. ¶ 67. The Court grants this motion to the extent Nance's co-defendants have moved for relief that would be applicable to Nance and to the extent that Nance would have standing to make such motions.

### 9. Government's motion for reciprocal discovery

 Pursuant to Rule 16(b), the Government has moved for reciprocal discovery of evidence Nance intends to use at trial. The Government also moves for notice of any hearsay statements Nance intends to introduce under the residual exception to hearsay in Federal Rule of Evidence 807. Nance has not opposed either motion. The Court therefore grants both motions.

---

severance whenever codefendants have conflicting defenses." *Zafiro*, 506 U.S. at 538, 113 S.Ct. 933. In any event, to the extent that mutually exclusive defenses might justify severance, Nance offers no reason why his defense might be mutually exclusive with those of his co-defendants. That is, if a jury accepted Nance's defense to each of the charges against him, Nance offers no reason why a jury would necessarily need to find his codefendants guilty of those same charges.

## CONCLUSION

For the reasons stated above, the Court rules as follows:

(1) Nance's motion to dismiss is denied;

(2) Nance's motion for a bill of particulars is granted as follows: the Government shall provide Nance with particularization concerning the date Nance is alleged to have first agreed with others to conduct the affairs of the alleged enterprise through a pattern of racketeering activity. Nance's motion for a bill of particulars is otherwise denied;

(3) Nance's motion for Rule 16 discovery is denied as moot;

(4) Nance's motion for production of Jencks Act material is denied without prejudice;

(5) Nance's motion for discovery of evidence the Government intends to offer pursuant to Federal Rule of Evidence 404(b) is denied without prejudice;

(6) Nance's motion for immediate disclosure of *Brady* material is denied without prejudice;

(7) Nance's motion for disclosure of "GPS monitoring records" is granted to the extent such records (if they exist) fall within the coverage of *Brady* ; provided, however, that the Government need not produce such records until such time as required under relevant law;

(8) Nance's motion for *Brady* material concerning hearsay declarants (or declarants of non-hearsay statements offered under Federal Rule of Evidence 801(d)(2)) whose statements the Government intends to offer at trial is denied without prejudice;

(9) Nance's motion for statements the Government intends to offer to demonstrate the existence of a conspiracy for purposes of Federal Rule of Evidence 801(d)(2)(E) is denied;

(10) Nance's motions for disclosure of grand jury instructions and "a statement of the extent of the use of summarized testimony, or hearsay testimony" is denied;

(11) Nance's motion for disclosure of the identities of, and information about, the Government's informants is denied;

(12) Nance's motions for suppression are denied;

(13) Nance's motion for severance is denied;

(14) Nance's motion to join in his co-defendants' motions is granted to the extent that such motions sought relief that would be applicable to Nance and to the extent that Nance would have standing to seek such relief himself; and

(15) The Government's motions for reciprocal discovery under Rule 16(b) and for notice under Federal Rule of Evidence 807 are granted.

**SO ORDERED.**